## MINNETONKA ELECTRIC COMPANY v. VILLAGE OF GOLDEN VALLEY.

141 N. W. (2d) 138.

March 11, 1966—No. 39,837.

*Grathwol & Ploetz* and *Raymond C. Ploetz,* for appellant.

*Best, Flanagan, Lewis, Simonet & Bellows* and *Robert M. Skare,* for respondent.

NELSON, JUSTICE.

This is an appeal from a judgment and orders denying plaintiff's motion for amended findings and conclusions of law. Plaintiff, an electrical contracting firm, brought the action seeking to have provisions of an ordinance requiring it to obtain a license to do business in defendant village declared unconstitutional, to recover a license fee paid by it under protest, and to enjoin defendant from requiring licenses in the future.

Plaintiff operates its business under a master electrician's license issued by the state to its president, William D. McQueen. McQueen's state license, which he has obtained annually since 1953, was originally issued upon the prerequisites of 3 or 4 years' service as a journeyman, a Bachelor of Science degree in electrical engineering, and a 4- or 5-hour written examination. Plaintiff's primary trade area consists of Hennepin County and several nearby counties, although it has also completed installations elsewhere in the state. Its business is extensive, numbering 800 to 1,000 jobs per year, of which about 75 percent are residential. In 1955 no municipalities in plaintiff's primary trade area required local licenses, but by 1962, 18 municipalities in that area, among them defendant, did so.

The record indicates that the State Board of Electricity has resident inspectors throughout the state who are prompt in enforcing state regulations and requirements. Defendant also has a system of building inspections and requirements with reference to electrical construction. In

December 1956, it enacted an ordinance adopting the 1947 Electrical Ordinance of the city of Minneapolis, including the licensing provisions thereof but increasing the license fee from $10 to $15. These provisions became effective December 31, 1956, and remain in force.

In May 1962 defendant refused to issue electrical construction permits to plaintiff because plaintiff had not obtained a village license. On May 17, 1962, defendant through its agents and employees physically expelled plaintiff's employees from an electrical job which it had undertaken in the village. Plaintiff then secured the license and this action followed.

Plaintiff contends that the attempt of the defendant village to license the electrical contracting business exceeds any authority possessed by it and violates the equal protection clause of U. S. Const. Amend. XIV and the due process clauses of said amendment and of Minn. Const. art. 1, § 7.

The record is clear that plaintiff has operated under a master electrician's license issued by the state pursuant to Minn. St. 326.25, and has met the statutory requirements governing electrical installation throughout the territory in which it has operated. During this same period the village of Golden Valley has regulated electrical construction within its boundaries pursuant to powers granted to it under § 326.32. The court below held that the village also had the power to license electrical contractors; that the state had not preempted the field; and that there was no valid constitutional objection to such licensing.

In holding that defendant could require a license, the court relied to a large extent upon State ex rel. Remick v. Clousing, 205 Minn. 296, 285 N. W. 711, 123 A. L. R. 465, in which we held that the city of Minneapolis could license plasterers for purposes of public safety. The trial court took the view that electricians ought to be placed in the same category because of the possible dangers involved should their work be performed improperly. The court also cited Jefferson Highway Transp. Co. v. City of St. Cloud, 155 Minn. 463, 193 N. W. 960, and State v. Clarke Plumbing & Heating, Inc. 238 Minn. 192, 56 N. W. (2d) 667, as authority for holding that the state has not preempted the electrical contracting field. The court reasoned that because the legislature had

not specifically proscribed municipal licensing of electrical contractors, it intended to give such powers to municipalities, especially since it had proscribed municipal licensing of plumbers and detectives. While plaintiff relied upon Village of Brooklyn Center v. Rippen, 255 Minn. 334, 96 N. W. (2d) 585, which held that a village ordinance requiring licenses for boats used on certain lakes was invalid, as controlling and decisive of the issues herein in its favor, the court below thought otherwise, suggesting that the subject of boat licensing was not peculiarly subject to local regulation and that plaintiff's business was. While the trial court suggested that requiring plaintiff to obtain many local licenses seemed unfair when it was already licensed by the state, the court concluded that the legislature was the appropriate body to grant relief from any unfairness.

The questions presented are:

(1) Does the Minnesota legislature authorize municipal licensing of electricians under Minn. St. 412.221, subds. 17, 28, and 32, or under §§ 326.31, subd. 4, and 326.32?

(2) Has the Minnesota legislature preempted the licensing of electricians by reason of §§ 326.25 and 326.26, which require state licensing?

■ It is clear that municipalities have no inherent powers and possess only such powers as are expressly conferred by statute or implied as necessary in aid of those powers which have been expressly conferred. Village of Brooklyn Center v. Rippen, *supra*. The legislature has not expressly conferred the power to license electrical contractors locally, but the village contends that its power to license electricians is implied from the provisions of § 412.221, subds. 17, 28, and 32. Subd. 17 confers upon municipalities power to prevent and control fires; subd. 28, to regulate construction of buildings; and subd. 32, to provide for the general welfare.

■ It is, of course, admitted that a municipality can act to protect the security of the community. In State ex rel. Remick v. Clousing, *supra,* this court said that the fact that plasterers are not specifically mentioned in the charter did not preclude the city of Minneapolis from enacting an ordinance requiring plasterers to be licensed. We went on to say in the

Remick case that the general-welfare clause in the charter was not limited to the things enumerated and that it authorized the regulation and licensing of businesses not specifically referred to in the charter, citing State v. Morrow, 175 Minn. 386, 221 N. W. 423, and Crescent Oil Co. v. City of Minneapolis, 175 Minn. 276, 221 N. W. 6.

The cases cited, however, as well as the Remick case, are distinguishable from the case at bar. In the Remick case no state license was required from plasterers. As a result, anyone could engage in the business of plastering without having to establish any qualifications whatsoever, and if he performed his work in an improper fashion, harm could result to citizens of the community. Thus, since the state had not preempted the area, reasonable municipal regulation was allowed. The Morrow case sustained a city license on automobile parking lots as a reasonable regulation under the charter general-welfare clause. Again, there was no state licensing requirement. In the Crescent Oil case we stated that gasoline filling stations were a proper subject for municipal regulation in the exercise of the police power and that the city could require licenses for their operation.[1] Although the court recognized that there were statutory regulations relating to filling stations, we said that they were still subject "to reasonable municipal regulation and to the requirement of a license." 175 Minn. 279, 221 N. W. 7. However, since a parking lot and a filling station are static installations and operate their businesses in one place, and since no state licenses are required, the issue of dual licensing was not present in the Morrow and Crescent Oil cases.

It is clear, as plaintiff concedes, that a municipality can regulate an activity even where the state is also regulating that activity. Plaintiff, however, contends that the requirement by defendant of a license for which the prerequisites are only the possession of a state master electrician's license and the payment of a $15 fee is not a reasonable municipal regulation and does not fall within the powers granted a municipality under § 412.221. There is nothing in the Remick or Crescent Oil cases indicating to the contrary.

---

[1] In a later decision, Crescent Oil Co. v. City of Minneapolis, 177 Minn. 539, 225 N. W. 904, this court held that the license involved was not a license, but a disguised tax and thus invalid.

The village cites Jefferson Highway Transp. Co. v. City of St. Cloud, *supra,* for the purpose of showing that even where the state requires a license, a municipality can also license. However, in the Jefferson case it appears that the St. Cloud city charter conferred the power "to license and regulate hackmen, draymen, expressmen and all other persons engaged in carrying passengers, baggage and freight." 155 Minn. 466, 193 N. W. 961. Although the court noted that the power is usually granted municipalities to protect and promote the public welfare, the decision was based on the specific power granted in the charter rather than on the general-welfare clause therein contained. But the issue in the Jefferson case became moot within 2 months after the decision was issued since the legislature passed a law proscribing municipal licensing of busses. Under those circumstances the Jefferson case is hardly authority for the dual licensing of electricians.

The trial court referred to the case of State v. Clarke Plumbing & Heating, Inc. *supra,* as supporting local regulation more strict than existing state requirements. That, however, is not the issue here, since it cannot be said that the regulations of the village relating to electrical installations are stricter than the state regulations. Furthermore, in the Clarke case the city did not require a license of the defendant but merely imposed a regulation to protect the general welfare of the community, as it was entitled to do under its charter.

While § 326.32, subd. 1, states that "nothing herein contained shall prohibit any municipality from making and enforcing more stringent requirements than those set forth herein, and * * * such requirements shall be complied with by all licensed electricians working within the jurisdiction of such municipalities," it will be noted that no mention is made of the power to license.

The village cites City of Duluth v. Cerveny, 218 Minn. 511, 16 N. W. (2d) 779, and City of St. Paul v. Dow, 37 Minn. 20, 32 N. W. 860, for the purpose of showing that the power to regulate is liberally interpreted and implies the power to license. While the Cerveny case did indicate (218 Minn. 518, 16 N. W. [2d] 783) that "charter provisions as to the exercise of police power by municipalities concerning matters peculiarly subject to local regulation" should be liberally interpreted, the

case did not involve a license, only a regulation which provided for search, seizure, and forfeiture of intoxicating liquor. The Dow case involved a building permit, not a license. Plaintiff in this case concedes that the village can require a construction permit and may inspect electrical installations within its jurisdiction. § 326.31, subd. 4. There is, however, no case law tending to support an implied power to license as an aid to a specific statutory grant. Village of Brooklyn Center v. Rippen, *supra,* held that a village does have implied power to regulate boating within its boundaries but does not have the implied power to license. This court reasoned in that case that boating was not a peculiarly local activity and that local licensing would tend to inhibit people from using their boats on various lakes around the state. The village argues that here plaintiff can defray the cost of a license by passing it on to customers and that under those circumstances the inhibiting effect of licensing foreseen in the Brooklyn Center case is not present. The village also contends that electrical work is a peculiarly local activity. While this may be true, it does not necessarily mean that a license is the only way to regulate the activity. It seems clear to us that the powers of villages to regulate building construction, to prescribe requirements relating to electrical work, and to inspect electrical installations are sufficient to protect the community. We cannot see that power to license need be implied for that purpose.

Plaintiff cites two opinions of the attorney general, one dated March 24, 1938, Report Attorney General, 1938, No. 51, and No. 188-B, dated March 8, 1951, in support of its contention that the state has preempted the field of licensing of electricians. The village, however, points out that the later opinion was reversed by one dated July 11, 1951, Report Attorney General, 1952, No. 132, wherein the attorney general said:

"The practice in this state of licensing electricians by municipalities, which has continued for so many years without interruption, should not in my opinion be declared illegal at this late date by the Attorney General. If the practice is to be terminated it should be by court decisions or the enactment by the legislature of legislation requiring such termination."

In effect, all the attorney general has said is that he does not feel that it is his prerogative to declare a longstanding practice illegal. A reading of the opinions indicates that they made no distinction between the power to license and the power to regulate.

Concerning the power to license, 38 Am. Jur., Municipal Corporations, § 359, contains the following statement:

"The power to license occupations which would otherwise exist in a municipal corporation sometimes has to yield to rights arising from a higher source. Thus, when a state, under its police powers, has undertaken to regulate a certain occupation and to issue licenses to those qualified to engage in it, a municipality cannot lawfully prohibit those holding a license from the state from engaging in the occupation until they have also taken out a license from the municipal authorities. A statute providing for the examination of the followers of a particular occupation, and for the granting of certificates to follow such occupation, which shall be valid throughout the state, precludes a municipal corporation from requiring the holders of such certificate to pay an additional license imposed by ordinance."

In the light of the foregoing statement, we think the contention that the state has not preempted the field is unsound despite the fact that the legislature has not specifically said so. It will be conceded that there is a split of authority among the states as to the power of a municipality to license where the state has already licensed. In this state the legislature has recognized that villages should be able to regulate matters of local concern. The quality of electrical installations is certainly within this category and the state has given broad powers of regulation. §§ 326.31, subd. 4, and 326.32, subd. 1. We think it clear, however, that the power to license is not an integral or necessary part of the power to regulate. We therefore reach the conclusion that municipalities have no power to license electricians in this state. Other jurisdictions have reached the same conclusion under circumstances similar to those disclosed by the record here.

In State ex rel. Sheldon v. City of Wheeling, 146 W. Va. 691, 694, 122 S. E. (2d) 427, 429, the supreme court of West Virginia said:

"* * * Even if it be assumed that the statutory provisions mentioned, and they probably do, vest in the city power to regulate the occupation or business of plumbing, there is nothing contained in such provisions that can be said to authorize or empower the city to require such licenses, for such power to regulate may be exercised though no license is required or granted. The power to license is not 'indispensable' to the power of the municipality to regulate the plumbing occupation or business."

See, also, 54 W. Va. L. Rev. 444.

In Wilkie v. City of Chicago, 188 Ill. 444, 58 N. E. 1004, it appears that the city of Chicago had required a $30 fee for a city plumbing license. The State of Illinois shortly thereafter required a plumber's license. In holding the city's license requirement invalid, the Illinois court said (188 Ill. 451, 58 N. E. 1006):

"* * * Manifestly, it does not improve the health of the public or suppress disease to collect $30 from a plumber."

In 9 McQuillin, Municipal Corporations (3 ed.) § 26.24, the author follows the same reasoning, stating:

"* * * [A] city cannot impose a tax on the privilege of engaging locally in a certain business on one who has paid a state tax and been issued a license to engage in that business throughout the state."

Plaintiff was entitled to a granting of the motion for amendment of findings and conclusions of law in the court below.

Reversed.