C. Rex WELSH, Petitioner, Appellant
(C2–83–1276), Respondent
(C3–83–699),

v.

CITY OF ORONO, A Minnesota municipal corporation, Respondent (C2–83–1276), Appellant (C3–83–699).

No. C3–83–699, C2–83–1276.

Supreme Court of Minnesota.

Aug. 31, 1984.

Rehearing Denied Oct. 23, 1984.

Bruce D. Malkerson, Thomas J. Radio, Minneapolis, for City of Orono.

Scott G. Harris, Eileen M. Roberts, Minneapolis, for Welsh.

KELLEY, Justice.

The City of Orono denied C. Rex Welsh's (Welsh) application for a conditional use permit to dredge a portion of the bed of Lake Minnetonka adjoining the Welsh residence. Welsh filed this action seeking declaratory and injunctive relief.[1] The trial court granted Welsh summary judgment on the ground that Orono lacked jurisdiction to regulate lakebed dredging. The court ruled any Orono regulation of dredging was void and further ordered Orono to stop "interfering with" Welsh's dredging and his proposal to construct a permanent dock and to riprap the shoreland adjoining the proposed permanent dock.[2] The trial court did not specifically rule on the remaining claims in Welsh's complaint. Orono appeals from the summary judgment order. Subsequent to Orono's appeal, Welsh moved for attorney fees pursuant to 42 U.S.C. § 1988 (1982). The trial court denied that motion. Welsh appeals the denial of attorney fees.[3] We affirm the trial court's order that Orono lacked jurisdiction to regulate dredging in the bed of Lake Minnetonka and denying Welsh attorney fees. We reverse that part of the order banning Orono from "interfering with Welsh's construction of a permanent dock and riprapping the shoreland adjoining the dock."

Welsh resides on residentially-zoned property bordering North Arm Bay, a portion of Lake Minnetonka within the city limits of Orono. He desired to dredge the lake adjacent to his property in order to obtain boat access to the property. He acquired a permit to do so from the Minnesota Department of Natural Resources (DNR) on August 4, 1981. The permit issued by the DNR was expressly conditioned on other governmental approvals

---

1. Welsh asserted five claims in his complaint: (1) Orono unlawfully denied the permit; (2) Orono lacked jurisdiction to regulate the dredging of Lake Minnetonka; (3) the state had preempted municipal regulation of lake bed dredging; (4) Orono waived its right to object to the dredging; and (5) Orono's unlawful exercise of its police power violated Welsh's constitutional rights. (The last claim alleged violations of the due process and taking clause of the United States and Minnesota Constitutions and the federal equal protection clause. It also claimed these alleged violations constituted a violation of 42 U.S.C. § 1983 (1982), thus entitling Welsh to attorney fees under 42 U.S.C. § 1988 (1982).)

2. Orono had enacted an ordinance that required a conditional use permit to dredge the lakebed of Lake Minnetonka within its jurisdiction. Orono City Ordinance § 31.832(b)2.

3. Welsh's appeal initially was to the Minnesota Court of Appeals. By order, we granted a petition for accelerated review and consolidated his appeal with that of the City of Orono for consideration here.

necessary to dredge, riprap and install a permanent dock. Welsh also, as required by state law, served the Lake Minnetonka Conservation District (LMCD) and the Minnehaha Creek Watershed District (MCWD) notice of the proposed dredging. The City of Orono was also mailed a copy of the DNR permit application. The LMCD and the MCWD both consented to the dredging. The City of Orono failed to file comments with the DNR, MCWD or to LMCD regarding the Welsh application. The DNR "notification of permit application" to be served upon local governmental units where the dredging would occur requested, but did not require, local entities to comment on the application.

Welsh originally submitted an application to the City of Orono for a conditional use permit to dredge and riprap the lakebed adjacent to his property to gain boat access to his land. He evidently at that time did not request approval from Orono of a plan to install a permanent dock. The planning commission of the City of Orono considered and recommended denial of the application. Welsh thereafter submitted a modified application. The planning commission again recommended denial because it felt a 150-foot dock to reach navigable water was a reasonable alternative to dredging.[4]

The Orono city council's consideration of Welsh's application was delayed at his request for several months. Ultimately, Welsh requested that the application be reactivated. The Orono city council, with Welsh present, voted to deny the application in concept and requested the city planner to draft a resolution of denial. The draft resolution was scheduled for review on July 12, 1982. Although Welsh was notified, he declined to attend this meeting. The council, therefore, tabled the matter without discussion.

On September 13, 1982, the city council heard a final summary of the evidence and testimony regarding its denial of the dredging permit. Welsh was notified of this meeting but chose not to attend. Based on this testimony of adverse environmental effects of dredging, the availability of a permanent dock alternative, and evidence of sufficient existing water depth for navigation, the city council voted to deny the conditional use permit. Passage of the resolution of denial prompted Welsh's suit for declaratory and injunctive relief in Hennepin County District Court.

1. On appeal, Orono claims it has implied power to regulate lakebed dredging within its corporate limits concurrently to DNR regulation because of various express legislative delegations of power to municipalities of related subjects. It contends the power to regulate dredging is a necessary implication of power to regulate the general welfare, docks and wharves, zoning, flood plaining and shoreland. In the past, this court has rejected a similar argument where a municipality sought to expand jurisdiction to license tradesmen as an aid to a specific statutory grant. *See Minnetonka Electric Co. v. Village of Golden Valley,* 273 Minn. 301, 141 N.W.2d 138 (1966).

A municipality has no inherent powers, but only such powers as are expressly conferred by statute or are implied as necessary in aid of those powers which are expressly conferred. *Village of Brooklyn Center v. Rippen,* 255 Minn. 334, 96 N.W.2d 585 (1959); *Minnetonka Electric Co. v. Village of Golden Valley,* 273 Minn. 301, 141 N.W.2d 138 (1966). If the activity is one peculiarly subject to local regulation—based upon the nature of the activity and its customary area of performance—the necessary implied powers in aid of carrying out express statutory power is construed liberally. However, if a matter presents a statewide problem, the implied necessary powers of a municipality to regulate are narrowly construed unless the legislature has expressly provided otherwise. *Rippen,* 255 Minn. at 337, 96 N.W.2d at 588.

---

**4.** Although a 150-foot dock length would require a zoning ordinance variance, the city, in an unsworn affidavit of its city planner, alleged such variances had been granted in the past and would be approved if Welsh agreed to the alternative.

■ Orono claims a necessary implication of its power to regulate for the general welfare provided for in Minn.Stat. § 412.221 (1982) necessarily includes the regulation of lakebed dredging. The granted power to regulate for health, welfare and safety has been broadly construed to allow municipal regulation and licensing of wholesale cigarette sales even though another statute expressly only contemplated retail regulation. *State v. Crabtree Co.*, 218 Minn. 36, 15 N.W.2d 98 (1944). In the instant case, it is clear that dredging on the portion of the lakebed of a navigable lake which encompasses several different municipal jurisdictions is not a matter of peculiarly local concern. Regulation of cigarette sales in a municipality has little or no effect upon other jurisdictions. In contrast, if all political subdivisions adjoining Lake Minnetonka could regulate dredging of its lakebed, different portions of the lake would be subject to different and varied standards and regulations.

■ Moreover, the legislature has clearly established that water resource conservation, and particularly jurisdiction of dredge permit applications, has been delegated to the DNR.[5] These statutes vesting central planning of and control over the state's water resources in the DNR preclude an interpretation of the general welfare statute as including the power of a municipality to regulate dredging of waters within its jurisdiction.

■ Orono further asserts the express statutory power authorizing it to regulate the location, construction and use of piers, docks and wharves on navigable waters necessarily implies a power to regulate dredging. Minn.Stat. § 412.221, subd. 12 (1982). While the statute giving Orono the power to regulate docks clearly allows regulation by municipal ordinance of the location and length, as well as other reasonable regulations of docks extending into Lake Minnetonka, we decline to strain the meaning of that statute to include dredging of the lakebed as a necessarily implied power in furtherance of the specifically enumerated powers of controlling dock construction, length and use. Orono has shown no nexus between the subject of the state statute delegating dock regulatory powers to municipalities and the claimed implied power to regulate the dredging of the lakebed of public waters.

■ Orono further claims it has implied authority to regulate dredging from the

5.  The pertinent statutes read in part as follows:
    The purpose of Laws 1967, Chapter 905 is to centralize the operating authority of the department of natural resources in a commissioner and his deputy in lieu of the commissioner and several operating divisional directors; to coordinate the management of the public domain; to eliminate duplication of effort and function; and to *best serve the public in the development of a long range program to conserve the natural resources of the state.*
    Minn.Stat. § 84.024 (1982) (emphasis added).
    In order to conserve and utilize the water resources of the state in the best interests of the people of the state, and for the purpose of promoting the public health, safety and welfare, it is hereby declared to be the policy of the state:
    (1) *Subject to existing rights all public waters and wetlands are subject to the control of the state.*
    \*    \*    \*    \*    \*    \*
    (3) The *state shall control and supervise, so far as practicable, any activity which changes or which will change the course, current, or cross-section of public waters or wetlands,* including but not limited to the construction, reconstruction, repair, removal, abandonment, the making of any other change, or the transfer of ownership of dams, reservoirs, control structures, and waterway obstructions in any of the public waters or wetlands of the state.
    Minn.Stat. § 105.38 (1982) (emphasis added).
    It shall be unlawful for the state, any person, partnership, association, private or public corporation, county, municipality or other political subdivision of the state, to construct, reconstruct, remove, abandon, transfer ownership, or make any change in any reservoir, dam or waterway obstruction on any public water; or in any manner, to change or diminish the course, current or cross-section of any public waters, wholly or partly within the state, by any means, including but not limited to, filling, excavating, or placing of any materials in or on the beds of public waters, without a written permit from the commissioner previously obtained. Application for such permit shall be in writing to the commissioner on forms prescribed by him.
    Minn.Stat. § 105.42, subd. 1 (1982).

enabling act permitting municipal zoning. Minn.Stat. § 462.357, subd. 1 (1982).[6] The city argues the authority to regulate "the uses of land for * * * flood control or other purposes" necessarily includes the power to regulate the dredging of lakebeds. The zoning statute expressly delegates land use regulation to municipalities. It cannot reasonably be interpreted to include an implied power to regulate dredging in lakebeds of public waters.

◼ Orono further claims implied power to regulate dredging from the express power granted to municipalities to regulate flood plains by Minn.Stat. ch. 104 (1982) (the Flood Plain Management Act). Pursuant to that act, Orono has adopted a flood plain management plan. Orono Zoning Code 31.800–.895. A flood plain is defined in state law as an area "adjoining a watercourse which has been or hereafter may be covered by the regional flood." Minn.Stat. § 104.02, subd. 3 (1982). The state law also defines floodway as "the channel of the watercourse and those portions of the adjoining flood plains which are reasonably required to carry and discharge the regional flood." Minn.Stat. § 104.02, subd. 4 (1982).

Pursuant to section 104.04, local governments may develop flood plain management ordinances which may include but are not limited to "the delineation of flood plains and floodways," the "preservation of the capacity of the flood plain to carry and discharge regional floods," the "minimization of flood hazards," and the "regulation of the use of land in the flood plain."

The state DNR has promulgated regulations under the act which, in part, authorize local government to enact special permit uses within the floodway which have low flood damage potential and will not obstruct flood flows during a regional flood. N.R. 88(b) (1982), *recodified* at Minn.Rule

6120.5800, subp. 3 (1983). Orono has promulgated such conditional or special permit uses within floodways. Orono Zoning Code 31.832. Within these conditional uses is the provision requiring Welsh to obtain a permit for "dredging or excavation of material from any lakebed, pond, or wetland or from land adjacent thereto." Orono Zoning Ordinance 31.832(b)2.

DNR flood plain regulations, however, state that any proposed work in the beds of public waters to change its course, current or cross-section is "subject to" the provisions of Minn.Stat. ch. 105 (1982), including the DNR's permitting process for dredging. *See, e.g.,* N.R. 89(e)(1), *recodified* at Minn.Rule 6120.5900, subp. 6 (1983); *see also* Minn.Stat. § 105.42 (1982); 6 MCAR 1.5022 *et seq., recodified* at Minn. Rule 6115.0200 *et seq.* The DNR permitting statute, however, does require that approved dredging be completed in a manner consistent with local flood plain management and shoreland management ordinances. Minn.Stat. § 105.42, subd. 1a (1982).

The legislature, in enacting Minn.Stat. § 84.024 (1982) and Minn.Stat. §§ 105.38 and 105.42, subd. 1 (1982) made it clear that the public policy of this state is that the DNR is to have exclusive authority to grant or deny permits for dredging in lakebeds of public waters. That being so, we decline to judicially grant an implied power in a municipality to regulate dredging from the Flood Plain Management Act.

Orono next claims an implied power to regulate dredging from the Shoreland Management Act. Minn.Stat. § 105.485 (1982). This act, however, is expressly limited by definition to the regulation of certain land adjacent to waterways, not to lakebeds. Minn.Stat. § 105.485, subds. 1 and 2 (1982); NR 82(d) (1982), *recodified* at Minn.Rule 6120.2500 (1983). Moreover, the regulations enacted pursuant to section 105.485

---

**6.** In pertinent part Minn.Stat. § 462.357, subd. 1 (1982) provides:

> For the purpose of promoting the public health, safety, morals and general welfare, a municipality may by ordinance regulate * * * the uses of land for trade, industry, residence,

recreation, agriculture, forestry, soil conservation, water supply conservation, conservation of shorelands, * * * access to direct sunlight for solar energy systems, * * * flood control or other purposes and may establish standards and procedures regulating such uses.

indicate that the demarcation between municipal and DNR regulation is at the water's edge. NR 83(c)(3)(cc) (1982), *recodified* at Minn.Rule 6120.3300, subp. 4C. (1983).

By enacting sections 84.024, 105.38 and 105.42, the legislature has clearly established that in order to regulate, supervise and control public waters of the state, all authority over dredging the lakebeds of public waters is centralized in the DNR. The duties of the DNR with respect to the management and control of public waters is clearly dominant. Municipalities have no implicit power granted to them by the legislature to grant or withhold dredging permits in public waters. The trial court correctly determined that the DNR has exclusive jurisdiction and authority to regulate dredging in beds of public waters in Minnesota and that local ordinances of the City of Orono which purport to regulate such activity are null and void.

■■■ 2. The trial court also enjoined Orono from "interfering" with plaintiff's efforts to build a permanent dock and place riprap shoreline protection. Although Orono has no authority to regulate dredging in the lakebed, the legislature has granted it authority to regulate by ordinance the location, construction and use of docks on public waters within its jurisdiction.[7] Moreover, it has been granted legislative authority for local zoning. Minn.Stat. § 462.357, subd. 1 (1982). The authority granted to municipalities under this zoning statute can reasonably be interpreted to allow Orono to control and regulate the disposition of dredge spoil on municipally-zoned land. Indeed, the DNR dredging permit issued to Welsh is expressly conditioned upon proper spoil disposition. Furthermore, although

state law reflecting public policy clearly delegates to the DNR exclusive authority to grant or deny dredging permits, state law is also clear that dredging approval is conditional upon compliance with municipal regulations governing flood plain and shoreland areas. Minn.Stat. § 104.04, subd. 1 (1982); Minn.Stat. §§ 105.42, subd. 1a, 105.485 (1982).

■■■ Consequently, Orono does have jurisdiction to regulate disposition of dredge spoil either upon the flood plain or the shoreland areas to insure disposition consistent with its flood plain and shoreland management ordinances, and this would include the type and location of any shoreland riprapping. It follows that the trial court's order to Orono to refrain "from interfering" with Welsh's proposed dock and riprapping the shoreland was overly broad and must be vacated.

■■■ 3. Welsh appeals from the trial court's denial of attorney fees claimed under 42 U.S.C. § 1988 (1982). Because Orono had filed its notice of appeal prior to the trial court's order denying attorney fees, Orono argues the trial court was without jurisdiction to make any order or render any decision affecting the order appealed from. *State v. Bentley*, 216 Minn. 146, 12 N.W.2d 347 (1943), *overruled on other grounds, State ex rel. Peterson v. Anderson*, 220 Minn. 139, 19 N.W.2d 70 (1945). Even after an appeal is perfected, the trial court does retain jurisdiction over matters collateral and supplemental to the decision on the merits. *State v. Barnes*, 249 Minn. 301, 81 N.W.2d 864 (1957); *see also* Minn. R.Civ.App.P. 108.03.

---

7. Minn.Stat. § 412.221, subd. 12 (1982), which provides city authority to regulate the design and dimensions of docks, provides as follows:
   **Harbors, docks.** The council shall have power to establish harbor and dock limits and by ordinance regulate the location, construction and use of piers, docks, wharves, and boat houses on navigable waters and fix rates of wharfage. The council may construct and maintain public docks and warehouses and by ordinance regulate their use.

Orono's zoning code provides for permanent docks within the flood plain management ordinances of its zoning code. A permanent dock is a conditional use. Orono Zoning Code 31.-832(b)(3). It may be allowed if a conditional use permit is obtained. Orono Zoning Code 32.400–.490. In addition, if dock length exceeds Orono's zoning code requirements, a length variance would be required. Orono Zoning Code 32.300–.371.

This court has never addressed the question of timeliness of post-judgment motions for attorney fees· under 42 U.S.C. § 1988. The federal courts have resolved the issue in several different ways. *See* Note, *Timeliness of Post-Judgment Motions for Attorney's Fees Under the Civil Rights Attorney's Fees Awards Act,* 16 Valparaiso U.L.Rev. 355 (1982). Some federal courts have applied no time limits to motions if characterized as being collateral and independent of the merits. *Obin v. District No. 9 of the International Association of Machinists and Aerospace Workers,* 651 F.2d 574 (8th Cir.1981) (Title VII). We have adopted the supplemental or collateral proceeding approach in interpreting a state inverse condemnation attorney fee provision. *Spaeth v. City of Plymouth,* 344 N.W.2d 815 (Minn.1984). We there held a claim for attorney and expert witness fees pursuant to Minn.Stat. § 117.045 (1982) "should be treated as a matter independent of the merits of the litigation." 344 N.W.2d at 825. We perceive no reason why we should not apply the same approach in resolving timeliness of post-judgment motions for attorney fees under 42 U.S.C. § 1988. Since a petition for attorney fees is collateral to the merits, it may be heard and decided after perfection of an appeal by a party.

We now turn to the merits of Welsh's claim that the trial court erred in denying him attorney fees. The Congressional history of section 1988 reveals that the attorney fee provision was primarily enacted to encourage civil private attorney general actions as enforcement aids to the Civil Rights Act. S.Rep. No. 94–1011, 94th Cong., 2d Sess., 1–2, *reprinted in* [1976] U.S.Code Cong. & Ad.News 5908, 5909–10. Although section 1988 leaves an award of attorney fees to the discretion of the court, the United States Supreme Court requires an award of attorney fees to a prevailing party unless special circumstances would render an award unjust. *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

This case does not raise a fundamental civil rights issue such as voting rights, jury or job discrimination, school desegregation, or the like. This is not an action for private enforcement of civil rights, but rather a private action questioning a municipality's regulatory jurisdiction under state law. Thus, this action is not within the spirit of section 1988 fee awards considering the legislative history of the law and case interpretation. *Martin v. Hancock,* 466 F.Supp. 454 (D.Minn.1979); *Green v. Carbaugh,* 460 F.Supp. 1193 (E.D. Va.1978); *Naprstek v. City of Norwich,* 433 F.Supp. 1369 (N.D.N.Y.1977); *Boland v. City of Rapid City,* 315 N.W.2d 496 (S.D.1982). The essentially private nature of Welsh's action constitutes sufficient special circumstances to deny an award of section 1988 fees. Because that is one of the alternative reasons given by the trial court for denying the attorney fees, the order denying them cannot be said to be an abuse of discretion.

We affirm the trial court's order holding that Orono lacked jurisdiction to deny a dredging permit. We affirm the trial court's order denying Welsh section 1988 attorney fees. We reverse and vacate the trial court's order that Orono refrain from "interfering with" Welsh's attempt to build a permanent dock and place riprap shore protection. We remand to the trial court to in turn remand to the city council of the City of Orono to consider Welsh's application in respect to building a permanent dock, disposing of dredge spoil, and riprapping the shoreline.

Affirmed in part, reversed in part and remanded.