STATE OF MINNESOTA *ex rel.* Sarah B. Merrick *vs.* DISTRICT COURT OF HENNEPIN COUNTY.

February 21, 1885.

**Constitutional Law—Municipal Corporations—Assessments for Local Improvements.**—While only "municipal corporations" may be constitutionally authorized to levy assessments for local improvements, such assessments may be levied *in behalf* of a municipal corporation by its authorized agents.

**Same—Minneapolis Park Act.**—The act providing for a system of public parks in Minneapolis (Sp. Laws 1883, c. 281,) is not unconstitutional because the board of park commissioners is not a "municipal corporation."

| 33 | 235 |
| 55 | 285 |
| 33 | 235 |
| 59 | 529 |
| 33 | 235 |
| 65 | 312 |
| 33 | 235 |
| f75 | 466 |
| 33 | 235 |
| f80 | 55 |
| 33 | 235 |
| 82 | 395 |

**Same—Purchase of Lands with Exemption from Assessment.**—The act is not unconstitutional in its provisions authorizing the board of park commissioners to purchase lands at a price agreed upon with the owner, and which shall include the exemption of the remaining lands of the vendor from further assessment.

**Same—Equality in Taxation—Local Assessments.**—The constitutional requirement of equality in taxation is applicable with respect to legislation authorizing assessments for local improvements, and limits the power of the legislature; but the legislature may exercise its discretion, within prescribed limitations, in framing enactments as to the manner in which assessments shall be levied so as to secure equality of apportionment.

**Same—Possible Inequality.**—An act should not be declared invalid merely because inequality *may* result from its operation. Before courts can declare an act unconstitutional it should at least be *apparent* that it was not framed with regard to the constitutional requirement, or that it *will* produce gross inequality.

**Same—Submitting Act for Approval of Voters.**—The act was not unconstitutional because it was left to the vote of the city to determine whether its provisions should go into effect.

**Minneapolis Park Act — Appointment of Assessors — Publication of Notice.**—The act requiring the publication of a notice of the application to the court for the appointment of assessors, but prescribing no period for such publication, application should be made to the court to determine by order the period of publication. Upon proof of a publication for seven days, no such order having been sought, the court appointed assessors. The court having impliedly approved the publication as sufficient, it is to be afterwards deemed valid.

**Same—Notice of Meeting oɪ Assessors—Publication.**—A requirement in the act to give notice of the meeting of the assessors to make assessments, by publication for at least 10 days in one of "said daily newspapers," no daily newspapers having been previously referred to, is complied with by publication for 10 days in a daily newspaper in the city, the word "said" being rejected as meaningless.

**Same—Form of Notice.**—It is no valid objection that the notices published prior to the making of the assessments did not describe the property to be assessed or the district within which assessments would be made.

**Same — Purchase by Commissioners Sustained.**— A resolution of the board of park commissioners for the purchase of land, at a meeting of the board when it was not competent to take such action, was cured by

the subsequent and valid action of the board consummating the purchase.

**Same — Power of District Court to Review Assessment.** — Upon the hearing before the district court, upon application for the confirmation of an assessment, proper "objections" being filed as prescribed by the act, the court should consider, not merely as to the regularity and validity of the assessment, but should review the determination of the assessors upon evidence to be presented, and consider whether the assessment is apparently so grossly excessive or erroneous that, in the exercise of judicial discretion, the court should itself correct it or order a reassessment.

**Same—Confirmation of Assessment by District Court — Certiorari.**— The confirmation of assessments by the district court, contemplated by the act, becomes a final adjudication as to the validity of the assessments, and *certiorari* will lie to review the action of the court in respect thereto.

Writ of *certiorari*, issued on the application of Sarah B. Merrick, and directed to the district court for Hennepin county.

From the return made the following facts appear: From August 28, 1883, to September 4, 1883, the Board of Park Commissioners of Minneapolis caused to be published daily, in the Evening Journal, a daily newspaper published in Minneapolis, a notice that it would, on September 5, 1883, apply to the district court for Hennepin county for the appointment of three park assessors to assess the sum of $147,-125.72, ascertained as the amount required for the purchase and condemnation of the lands selected for the "Central Park," located in the fourth ward in Minneapolis, upon such land as the assessors shall deem specially benefited by such park and improvements, except upon such lots as had been exempted from such assessment.

On September 5, 1883, the district court, upon the application of the board, appointed three assessors to make the above assessment. The assessors so appointed gave notice of their meeting, to be held September 22, 1883, for the purpose of making such assessment, the notice being given by publication thereof in the said Evening Journal for ten successive days, the first publication being made on September 10, 1883. On September 22, 1883, the assessors met pursuant to such notice, and made an assessment of the sum of $147,125.72 upon the property which they deemed benefited, including certain

property of relator, which was assessed the sum of $350, which assessment was duly filed in the office of the clerk of the district court. Notice was thereupon given by the board of park commissioners, by publication in the Evening Journal for ten successive days, commencing October 7, 1883, that on October 18, 1883, it would apply to the district court for confirmation of the assessment.

Upon October 14, 1883, the relator filed in the district court written objections substantially as follows, viz.:

1. That Sp. Laws 1883, c. 281, the act under which the assessment is attempted to be made, is unconstitutional. That the legislature had no authority to pass the act, and the board derived no authority thereunder.

2. That section five of the above act, allowing the commissioners to exempt certain lands from the assessment, is in direct contravention of art. 9, § 1, of the constitution of Minnesota.

3. That the commissioners, under said section five, exempted certain land immediately contiguous to the park in question, and therefore the assessment is unjust and unequal.

4. That no notice of any of the proceedings herein, or of the appointment of the assessors, was ever given to relator, and that no hearing was had before the board or assessors as to whether relator's land was benefited.

5. That relator's land is over one-half mile from the park in question, and is in no manner benefited thereby.

6. That the assessors were freeholders and incompetent to act.

7. That the provisions of the act were never complied with, and the assessors had no authority to act.

8. That the act is unconstitutional in that it deprives the relator of her property without due process of law, and without hearing, and without giving her any legal or sufficient notice.

Upon the application for confirmation before *Lochren*, J., the relator offered evidence to prove that her land is one-half mile from the park and no part of the park can be seen therefrom; that three main thoroughfares separate it from the park, and that it is not on any street leading directly to the park; also that her land is in no way, manner or form specially benefited by the park, and that the

assessment as made is not equal and uniform.   The evidence was excluded by the court, and the relator's objections to the confirmation of the assessment were all overruled.   The court found as facts that at a meeting of the board of park commissioners held July 31, 1883, when only eight members were present, a resolution was adopted authorizing and directing a purchase of a portion of the lands necessary for the park; that at a subsequent meeting held January 5, 1884, by a vote of twelve commissioners, resolutions were adopted directing payment of the purchase-money for the above lands upon a conveyance being made, and exempting certain other lands owned by the vendor from further assessment for the park.   Thereupon the court made an order confirming the assessment.

*J. M. Quarles, Ripley & Morrison, Jackson & Pond, Isaac Atwater* and *Merrick & Merrick,* for relator.

Sp. Laws 1883, *c.* 281, is unconstitutional and void, because the board of park commissioners created thereby is not a municipal corporation.   If this board is a municipal corporation, the act is valid, otherwise not.   Const. art. 9, § 1.   A municipal corporation is defined to be "the incorporation, by authority of the government, of the inhabitants of a particular place or district, and authorizing them in their corporate capacity to exercise subordinate specified powers of legislation and regulation with respect to their local and internal concerns."   1 Dillon, Mun. Corp. § 20.   See, also, Potter on Corporations, § 369; *Heller* v. *Stremmel,* 52 Mo. 309; *State* v. *Leffingwell,* 54 Mo. 458.   If the board is not a municipal corporation, the saying that it is a municipal corporation cannot make it so.   The board has no connection whatever with the city council, the representative head of the government of the city of Minneapolis.   They are independent of each other in their functions and operations.   (1 Dillon, Mun. Corp. § 58.)   The board is not a department of the city government; but, granting that it is, still it will not answer to confer authority upon a department when it is required to be conferred upon the whole municipal government.   The conclusion is irresistible that, a constituent part of a municipal corporation not being equal to and the same as the corporation, conferring authority upon the part is not the same as conferring authority upon the corporation,

unless the part selected be the representative head of the corporation. All corporate powers are usually vested in the city council.

The board of park commissioners, if a corporation at all, is a mere *quasi* corporation of the lowest order, and as such a mere agent of the state. 1 Dillon, Mun. Corp. § 22; Cooley, Const. Lim. 240; *Askew* v. *Hale Co.*, 54 Ala. 639; *State* v. *Leffingwell*, 54 Mo. 458; *City of St. Louis* v. *Shields*, 62 Mo. 247; *San Francisco* v. *Spring Valley Water Works*, 48 Cal. 493, 522; *Com'rs of Hamilton Co.* v. *Mighels*, 7 Ohio St. 109; *Finch* v. *Board of Education*, 30 Ohio St. 37.

The act in question is unconstitutional and void because of the provisions of section five, allowing the board to exempt from assessment the lands of the vendors of the park site. This exemption is evidently intended as a part of the consideration paid for the land purchased for park purposes, and in that sense is doubtless designed to take the place of the assessment for benefits "upon the remaining contiguous lands." Assessments on all other lands specially benefited are levied by assessors appointed by the district court and are paid in money. It thus appears that there are two separate authorities, each differently constituted, raising taxes for the same purpose in the same assessment district, in modes entirely separate, distinct and different. It is clearly a flagrant violation of the constitutional mandate enjoining equality and uniformity in taxation. Const. art. 9, § 1; *McComb* v. *Bell*, 2 Minn. 256, (295;) *Stinson* v. *Smith*, 8 Minn. 326, (366;) *Allen* v. *Drew*, 44 Vt. 174; *Fretwell* v. *Laffoon*, 77 Mo. 26; Cooley on Taxation, 145, 153, 172; *County of San Mateo* v. *South. P. R. Co.*, 13 Fed. Rep. 722; *County of Santa Clara* v. *South. P. R. Co.*, 18 Fed. Rep. 385.

The assessment is invalid and void because there was no sufficient notice to the relator. The federal constitution guarantees to every citizen the opportunity of being heard before his property can be taken for any purpose or in any mode, and his property can only be taken by "due process of law." The notice given in this case and provided for in this act is entirely insufficient to insure the relator a hearing and to be the basis of "due process of law." *Stuart* v. *Palmer*, 74 N. Y. 183; *City of Philadelphia* v. *Miller*, 49 Pa. St. 440, 448; *Davidson* v. *Bd. of Administrators*, 17 Alb. L. J. 223; *County*

*of San Mateo* v. *South. P. R. Co.,* 13 Fed. Rep. 722; *County of Santa Clara* v. *South. P. R. Co.,* 18 Fed. Rep. 385.

The court erred in refusing to hear and consider the evidence offered to show that the lands of relator are not and never will be in any way specially benefited by Central Park, and that the assessment as made was not uniform and equal. The charter of the city of St. Paul, construed in *State* v. *Bd. of Public Works,* 27 Minn. 442, provides for different proceedings from those provided in the present act.

*Daniel Fish,* for respondent.

DICKINSON, J.   *Certiorari* to the district court of Hennepin county. The proceedings to be reviewed were had under an act of the legislature, (Sp. Laws 1883, *c.* 281,) providing for the acquisition of lands for public parks in the city of Minneapolis, and for making special assessments of the cost upon property benefited thereby. The relator is the owner of lands upon which such assessments were made. We here indicate the nature of this enactment, so far as it is necessary to be considered in the decision of the case. The act creates a board of park commissioners consisting of certain persons named, together with the mayor and two members of the city council, which board is made a department of the city government. It provides for the perpetuation of the board by annual elections. The board is authorized to designate lands to be acquired and appropriated for the purposes of public parks, and by a prescribed procedure *in invitum,* or by purchase, to acquire title thereto, which is to vest in the city of Minneapolis. In case of the purchase of lands for the contemplated purposes, the board of park commissioners is authorized (section 5) "to agree with the vendor or vendors of the lands so purchased upon a price therefor, which may, in addition to the purchase price of such land, include exemption from an assessment for benefits upon any remaining contiguous or adjacent lands owned by such vendor or vendors, and in that case such remaining lands shall be free from any liability to assessment and contribution for benefits to be assessed upon lands as in this act provided."

Upon ascertaining the amount required for condemnation or purchase of lands, the board of park commissioners is required to apply to a judge of the district court of Hennepin county for the appoint-

ment of three assessors. Notice is to be given in the official newspaper of the city, of the time when such application will be made, and parties interested may appear and be heard in relation to the appointment.     No time for publication of the notice is specified in the act.     The board of park commissioners is to determine what proportion of the cost shall be assessed upon the lands benefited. The assessors having been appointed, and having qualified as prescribed, are to give at least 10 days' notice, (section 5,) in "one of the said daily newspapers," (there is no previous mention in the act of any daily newspaper,) of the time and place of their meeting for the purpose of making assessments.    "All parties interested may appear before said assessors, and may be heard touching any matter connected with the assessment; and the assessors shall hear and consider any pertinent testimony offered, and may administer oaths to witnesses.    *    *    *    The said assessors shall proceed to assess upon such lots, blocks, tracts, and parcels of land in the city of Minneapolis as they shall deem to be specially benefited by such parks, parkways, and improvements, whether the said lands shall adjoin and abut upon such parks or parkways, or any of them, or not, and assessing upon each such lot, block, or tract, such sum as they shall deem a just proportion of such percentage of the cost so to be assessed and charged for benefits; and the decision of said assessors as to what lots, blocks, and parcels of land are specially benefited shall be deemed to include all the lands which are so specially benefited."

When the assessment shall have been completed and filed, the commissioners are to give at least 10 days' notice, in one of the said daily papers, of the filing of the assessment, and of the time when they will apply to the district court for confirmation of the same.    A copy of the notice is also to be served by leaving it at the place of abode of each person known to be the owner of or interested in any lands assessed, at least five days before the application for confirmation.    "All parties interested may appear before said district court, either in person or by attorney, when such application shall be made, and may object to said assessment, either in whole or in part: *provided* all objections shall be in writing, and shall be filed at least three days before the time fixed for the application, and shall specify the lot, block, or par-

cels of land on behalf of which objection is made. &ast; &ast; &ast; Said district court shall have power to revise, correct, amend, or confirm said assessment in whole or in part, and may make or order a new assessment in whole or in part, and the same revise and confirm upon like notice." After confirmation and filing of the assessment, it becomes a lien upon the land assessed, and is to become payable in annual instalments, which are to be included in the general tax lists. "Like proceedings in all respects shall be had for enforcing the collection of the same as is now provided by law for the collection of city, state, and county taxes."

By the terms of the act it is provided that the commissioners shall take no proceedings for the condemnation or purchase of lands until the approval of the act, by vote of the city, shall be expressed in a manner prescribed.

1. Upon the argument the respondent submitted a motion to quash the writ, claiming that the relator had a prescribed and adequate remedy by answer to the application for judgment, and in the hearing thereon in proceedings under the general tax law to enforce the collection of delinquent taxes. This motion is denied. We construe this act as contemplating that the confirmation of the assessments by the district court shall be a final determination, an adjudication, as to the validity of the assessments, precluding subsequent objection. *People* v. *Brislin*, 80 Ill. 423; *Dolan* v. *Mayor*, 62 N. Y. 472; *Pittsburg* v. *Cluley*, 74 Pa. St. 262.

2. The relator disputes the constitutionality of the act, upon the ground that by the terms of the proviso in section 1, article 9, of the constitution, only *"municipal corporations"* may be authorized to levy assessments for local improvements upon the property benefited thereby, and that the board of park commissioners is not a "municipal corporation." We deem the act to be within the constitutional power of the legislature as thus limited. The acts of the municipal corporation, the city of Minneapolis, must necessarily be performed through the agency or instrumentality of persons, for the corporation, the mere legal entity, is itself incapable of action. It is immaterial, so far as the question under consideration is concerned, whether the agents through whose action these assessments are made consist of

the ordinary municipal officers, such as the city council, or are created by the appointment of the city council, under legislative authority, or whether, as in this case, they are created directly by legislative enactment. The board of park commissioners is a proper agency of the municipality, created by the legislature as a department of the city government, for the performance of specified municipal duties. The lands acquired by these proceedings are acquired by and for the use of the city, and in the city title vests. The assessments, when collected, are paid into the city treasury. The proceedings, prosecuted by authorized agents in behalf of the city, are prosecuted by the municipal corporation, in the sense in which alone the municipality can act in such matters. See *Cook* v. *Slocum*, 27 Minn. 509, 511.

3. The lands acquired through the proceedings under consideration, and the cost of which was charged by assessment upon lands of this relator and of others, were acquired by purchase by the board of park commissioners, and not by condemnation. It is urged that the act is unconstitutional, in that it does not, as is claimed, provide for an equal and uniform assessment in such cases, because of the provisions with respect to exempting the remaining lands of a vendor from assessment. The points more specifically stated are that the deduction in price from the value of the lands purchased, and which is in the nature of an assessment upon the vendor's remaining lands, is made by the *board of park commissioners*, and is paid in the land sold; while other assessments are made by the *assessors*, and are paid in money; that the amount of such deduction is arbitrarily fixed by the board of park commissioners and may be uncertain or indistinguishable, and is determined without notice to others who may be liable to assessment, and who have no remedy in respect to the action of the park commissioners.

The authority to levy assessments of this nature is to be referred to the sovereign power of taxation,—*McComb* v. *Bell*, 2 Minn. 256, (295;) *Stinson* v. *Smith*, 8 Minn. 326, (366;) *Noonan* v. *City of Stillwater*, ante, 198, and the constitutional limitations upon the power must be observed. They are only such as are expressed in the section referred to, which is as follows: "All taxes to be raised in this state shall be as nearly equal as may be; and all property on which taxes

are to be levied shall have a cash valuation, and be equalized and uniform throughout the state: *provided,* that the legislature may, by general law or special act, authorize municipal corporations to levy assessments for local improvements upon the property fronting upon such improvements, or upon the property to be benefited by such improvements, without regard to a cash valuation, and in such manner as the legislature may prescribe." The proviso was added as an amendment to the section as it previously stood, in 1869.

It had before been decided in *Stinson* v. *Smith, supra,* that the constitutional requirement that taxes should be apportioned upon a *cash valuation* of property was applicable to assessments for local improvements, and that the levying of such assessments upon the basis of estimated benefits was unconstitutional. The amendment is understood to have been adopted in view of that decision, and its purpose was to authorize such assessments to be made upon property fronting upon an improvement, or upon property benefited, *without regard to a cash valuation.* Neither from the circumstances under which the amendment was adopted, nor from its language, is it considered that its purpose was to wholly abrogate, in respect to such assessments, the requirement that "all taxes   *   *   *   shall be as nearly equal as may be," although the basis of assessment, by which equality of apportionment should be sought to be attained, is changed, and the legislature is invested with a discretion to determine the manner in which assessments shall be made. *Noonan* v. *City of Stillwater, ante,* 198. It must still be regarded as the constitutional duty of the legislature to frame its enactments with regard to the principle of equality, and a clear disregard of that requirement would affect the validity of legislative action. But where the legislative discretion has been actually exercised, and a law framed which, in its judgment, is calculated to effect an equal apportionment of the burden of assessment upon the principle of benefits conferred, such legislation cannot be set aside by the courts merely because they may deem the law inexpedient, or not well devised for the purpose of securing in the highest degree equality in the apportionment of assessments. It is not enough to warrant the courts in declaring the law to be invalid that they may consider that the law *may* actually fail to accomplish the purpose of equal and just

assessment. It should at least be apparent that the law is framed upon a plan or principle not calculated to result in equality of apportionment, or that in its operation, when carried into effect with honesty, and in the exercise of sound judgment on the part of those who are to execute its provisions, it will produce such gross inequality as cannot be deemed, in a just sense, an apportioning "as nearly as may be" of the burden, before courts can interfere and declare the enactment void. *Com.* v. *People's, etc., Bank,* 5 Allen, 428; *Allen* v. *Drew,* 44 Vt. 174; *Cleveland* v. *Tripp,* 13 R. I. 50; *Youngblood* v. *Sexton,* 32 Mich. 406; Cooley on Tax'n, 126, 127; *Cheshire* v. *County Com'rs,* 118 Mass. 386.

The provisions of this act are not such as to show that the legislature did not duly regard their constitutional duty of securing an equal and just apportionment of the assessments to be made; nor is it apparent that inequality or injustice will result from carrying it into effect. The objections to which we have referred we think relate rather to the expediency of the law than to its constitutionality. The provisions of the act allowing, upon the purchase of lands, the fixing of a price with reference to the exemption of the vendor's other lands from assessments, must be deemed to have been based upon the consideration by the legislature—and that was for the legislature to determine—that it might be more expedient to *purchase* than to *condemn* lands, and that land-owners might be unwilling to sell for an uncertain price, or for a stated sum, an indefinite part of which should be charged over by assessment upon their remaining lands. Hence, in contemplating the purchase of particular lands, the commissioners are authorized, in effect, to determine the proper measure of benefit from the improvement to the vendor's remaining lands which might be deemed liable to assessment, and, securing a deduction of such sum from what may be deemed the fair value of the land to be appropriated, to thus effect a purchase. The law does not contemplate an exemption of the vendor's lands from their proper proportion of the burden. It is conceded that the deduction from the value of the land purchased stands in place of an assessment. But it cannot be deemed that inequality or injustice will necessarily, or even probably, result from the fact that the *commissioners* are to determine the amount of

such deduction, while a different body, the *assessors*, are to make all other assessments.     Agencies must be employed for all the processes of taxation, and it cannot be presumed that the different agents employed will not act with integrity and exercise equally sound judgment.     Whether an apportionment is to be made by one appointed agent, or by another, or by several, it must be presumed that it will be justly made with regard to the benefits conferred, and in the exercise of equally sound judgment on the part of all.

Nor can it be declared that the act is unconstitutional because the amount of deduction made from the estimated value of the land purchased is determined by the commissioners without notice to other land-owners whose property may be liable to assessment; nor because it does not require a record to be made of the amount of such deductions or allowances; nor because no way is prescribed to bring under review this action of the commissioners.     The first of the objections here referred to is based upon a provision which is incident to the power to purchase, as has been already indicated, and which, we think, is within the discretion of the legislature.     All of the objections just referred to relate rather to the expediency of the act, than to its constitutionality.     Assuming, as we must, that those to whom the execution of the various provisions of the law are committed will act honestly and exercise just judgment, it is not apparent that any injustice will be accomplished, unless from such possible errors of judgment as may attend the execution of any law for taxation.

4. The point that the act is unconstitutional because it was left to the vote of the city to determine whether it should go into operation, is not much relied upon, and is admitted to be against the weight of authority.     We decide the point against the relator.     Cooley, Const. Lim. (5th Ed.) \*118, 143.

5. It is claimed that the proceedings were invalid because of want of sufficient notices of the application for the appointment of assessors, and of the meeting of the assessors to make the assessments.     The act requires notice of application for the appointment of assessors to be given in the official newspaper, no time or period of publication being prescribed.     The notice was published daily for seven days prior to the application, and upon this the court acted.     No period

of publication being prescribed, we think application should have been made to the court to designate by order such period as should be deemed reasonable. But a publication was authorized without the order of the court, although no period of publication was prescribed. Upon proof of the publication in the prescribed manner for the period of seven days, the court having impliedly approved it by recognizing its sufficiency, it had the same validity as if the court had before publication designated the period which was deemed reasonable, and it should not now be declared invalid.

The assessors were required to give at least 10 days' notice of their meeting in one of "said" daily newspapers, no daily newspapers having been previously named in the act. The word "said" should be rejected as meaningless, and the publication for 10 days in a daily paper of the city being a compliance with the requirement of the law, the courts cannot say that a more extended or different notice should have been prescribed, and declare that which the legislature has required to be invalid. *Dousman* v. *City of St. Paul*, 23 Minn. 394.

It is further objected that the notices to which we have referred did not designate the property to be assessed, nor the district within which assessments would be made. The law did not require it. On the contrary, one of the very purposes of the meeting of the assessors, of which the notice is intended to give publicity, is to determine, upon the investigation to be then pursued, what property shall be found to be benefited, and hence subject to assessment.

6. Another point, not much relied upon by the relator, is that at a meeting of the board of park commissioners, when only *eight* members were present, a motion was adopted accepting, with a qualification, an offer to sell certain lands for the park in question. Whatever objection there might have been to this, if no other action had been taken by the board, was cured by a subsequent resolution of the board, supported by the vote of 12 members, confirming the contemplated purchase by making provision for payment of the purchase price upon conveyance being made of the land. The purchase was lawfully consummated.

7. When the proceedings came before the district court, upon application for confirmation of the assessments, the relator, having filed

objections as prescribed by the law, "offered to prove that her lots assessed are situate one-half mile distant from Central Park, and that no part of the park can be seen from said lots; that the lots aforesaid are all separated from said park by three main thoroughfares, and are not on any street leading directly to the park; that the said lots are in no way, manner, or form specially benefited by said park, and never will be so benefited; and that the assessment as made was not equal and uniform." The court, deeming the evidence incompetent, refused to hear it. The fact that the property was separated from the park, as indicated in the offer, would not alone show any impropriety in the assessment, for the act contemplates the assessment of lands deemed to be specially benefited, "whether the said lands shall adjoin and abut upon such parks or not." The legal question presented is whether it was the duty of the court to hear evidence offered for the purpose of showing that the park would be of no special benefit to the relator's lands, or was the assessment, the proceedings being regular, conclusive as to the fact of benefits conferred, and as to the extent of such benefits?

The determination of this matter does not require a particular consideration of the constitutional power of the legislature; for we may assume that it had the power to declare that an assessment by the board appointed for that purpose, being regularly made and not fraudulent, should be final. *State* v. *District Court of Ramsey Co.,* 29 Minn. 62, 65, and cases cited.

But we have to consider what construction is to be placed upon the legislative enactment in respect to this subject. We have found it difficult, from the very general and indefinite provisions of the act, to come to conclusions which we can confidently declare to be in accordance with the legislative intent, and which are quite unobjectionable. It was not the purpose of the act that the proceeding before the court should be a reassessment *de novo.* On the contrary, as indicated by the terms of the act, the proceeding relates to the "confirmation" of an assessment already made. It contemplates the appointment, after notice and upon hearing, of three assessors qualified to discharge this precise duty; it contemplates notice and hearing before them, the consideration of evidence, and, as we think, the ex-

ercise also of their own judgment upon the matters to be determined. In view of these facts, we do not think it reasonable to construe the act as contemplating the setting aside of the determination thus made as to any objector, and, as a matter of course, allowing the trial of the same question as to benefits anew before the court, and making the opinion of the judge as to the facts to prevail over that of three assessors who had been selected to perform this very duty. The terms of the act do not require such a construction. While the court is empowered to "*make* or order a new assessment," in whole or in part, any such new assessment the court is to "revise and confirm upon like notice." It was not intended that the court should itself make an assessment upon a complete trial before it, and then "revise and confirm" its own judgment. The term "make" seems to have been used either in the sense of "order to be made," or else as referring to such corrected or amended assessment as should result from the exercise of the power of the court to "revise, correct, amend;" any modification of the original assessment being, in some sense, the making of a new or different assessment.

Neither, on the other hand, do we think the determination of the assessors so far conclusive, as to the matters of fact submitted to them, that its justice may not be inquired into by the court, where it is called upon to consider whether it should be confirmed, and the parties interested concluded by its judgment. The language in which the authority of the court is expressed, and which is recited at the commencement of this opinion, is very comprehensive, and affords reason for the conclusion that it was intended to authorize the court to consider and determine, not merely as to the regularity and validity of the assessment proceedings, but also the questions of fact upon which the assessment was based; that is, questions relating to the benefit conferred, and to the justice of the apportionment. The power to "correct" and to "amend" the assessment, in whole or in part, implies a consideration of such matters of fact; for that would be necessary to an intelligent exercise of the power. The record of the proceedings relating to the assessment would rarely, if ever, disclose any facts which would enable the court to *correct* or *amend* the assessment. Unless the court is authorized to inquire into the facts

of the case, and if only the regularity and legality of the proceedings are to be considered, it would seem that the assessments should either be confirmed or set aside and a reassessment directed, according as it should be found that the proceedings had or had not been regular and valid.   If the intention had been to limit the court, in its consideration of the case, to the facts of the regularity of the proceedings, it seems scarcely possible that language of such wide import would have been employed in place of the simple language, of certain meaning, in which such a purpose would be naturally expressed.   It is further to be observed, in connection with the terms of this act just referred to, that, while the inquiry before the court is to be directed to such "objections" as shall have been filed, there is no limit prescribed as to the nature or extent of the objections which may be made, and to which the attention of the court may be directed.

We have been led to the conclusion that, upon the application for confirmation, the court should consider the facts presented under proper "objections" relating to the justice of the assessment, not as a trial of the facts anew, and without regard to what the assessors may have determined, but *reviewing* that determination, and considering whether it is apparent that injustice has been done.   In reviewing the action of the assessors, the court should regard their decision much as it would the verdict of a jury upon a question the determination of which depended largely upon the opinions of competent judges.   The fact that the assessment was a decision of a body appointed and qualified to determine the matter submitted to them should be regarded; and the mere fact that upon investigation, and without giving sufficient weight to the decision of the assessors, the court might incline to the opinion that the assessment was too large, would not be a sufficient reason for setting it aside, if it appeared to the court to have been a not unreasonable, unfair, or partial determination of the fact.   But if the court is satisfied that injustice has been done, and that the assessment is grossly excessive or erroneous, the court would exercise the judicial discretion with which it is invested for the very purpose of preventing such injustice by correcting the assessment or by directing a reassessment.

The act makes no provision as to how the court may be so informed

that it may intelligently exercise this discretion.   No provision is made for preserving a record of the evidence upon which the assessors acted, and, in the absence of such provision, we think that the fact to be considered is open to proof in the ordinary way.   Hence we think it was the duty of the court to hear evidence offered for the purpose of showing that the property of the relator was not benefited, and that the assessment was not equal.   For this purpose the court would have the right to reasonably limit the number of witnesses who might be offered in support of any fact, and might also hear evidence to sustain the assessment.   We understand that the learned judge excluded the evidence for the reason that it was supposed that the decision of the assessors was final, and not subject to review, unless upon some objection calling in question the integrity of the action of the assessors.   Our decision to the contrary is placed upon the construction of the act referred to, and we deem the decisions of this court in cases arising under the charter of the city of St. Paul to have little bearing upon the case.

The confirmation of the assessment as to the lands of the relator is set aside, and the cause remanded to the district court for further proceedings.

NOTE.   *State of Minnesota* ex rel. Isaac Atwater vs. *District Court of Hennepin County,* which involved the same questions considered above, was argued and submitted at the same time, and on February 24, 1885, the following was filed, viz.:

DICKINSON, J.   The decision in *State* v. *District Court of Hennepin Co., supra,* is decisive of this case.   The confirmation of the assessment as to the lands of this relator is set aside, and the cause is remanded to the district court for further proceedings.