JOHN HANCOCK MUTUAL LIFE IN-
SURANCE COMPANY, and Mutual
Service Life Insurance Company, Re-
spondents,

v.

The COMMISSIONER OF
REVENUE, Relator.

No. C2–92–975.

Supreme Court of Minnesota.

March 19, 1993.

Hubert H. Humphrey, III, Atty. Gen., Michele M. Owen, Special Asst. Atty. Gen., St. Paul, for relator.

Walter A. Pickhardt, Faegre & Benson, Minneapolis, for respondents.

WAHL, Justice.

Relator Commissioner of Revenue (Commissioner) appeals a decision of the Tax Court holding that respondent insurance companies may claim a Minnesota Comprehensive Health Association assessment as a credit against the companies' 1986 Minnesota income taxes under Minn.Stat. § 290.-06, subd. 3f(6) (1986) as well as an offset against the premium tax under Minn.Stat. § 62E.11, subd. 8 (1986). If the credit is not authorized against state income taxes, respondents John Hancock Insurance Company (John Hancock) and Mutual Service Insurance Company (Mutual Service) question whether the Commissioner's application of Minn.Stat. §§ 290.06, subd. 3f(6) and 62E.11, subd. 8 violates their rights under the Equal Protection Clause of the United States Constitution and the Uniformity Clause of the Minnesota Constitution. For the reasons set out in this opinion, we reverse.

John Hancock and Mutual Service are insurance companies subject to the tax on premiums imposed by Minn.Stat. § 60A.15 (1986) (the premium tax) and the tax on net income imposed by Minn.Stat. § 290.02 (1986) (the income tax). Both companies sold policies of accident and health insurance during 1986 pursuant to Minnesota Statutes chapter 62A and thus were "insurers" within the meaning of Minn.Stat. § 62E.02, subd. 10. Respondents were also "contributing members" of the Minnesota Comprehensive Health Association (MCHA), an association created by the legislature in 1976 to provide qualified plan coverage for uninsurable or high risk persons. Although at first MCHA was financially underwritten by all of its member insurers, from 1979 until 1987 a sub-class of "contributing members" (which included respondents) was assessed for the plan's losses and administrative expenses on a pro-rata basis.

In 1986 John Hancock paid MCHA assessments of $172,688.55 and estimated installment payments of premium tax totaling $167,234.00. Mutual Service paid MCHA assessments of $388,504.00 in 1986 and made estimated premium tax payments of $358,900.00. Each respondent offset its MCHA assessments against the premium tax due for 1986 as provided by Minn.Stat. § 62E.11, subd. 8 (1986) (the offset provision), which reads in relevant part:

> Any annual fiscal year end or interim [MCHA] assessment levied against a contributing member may be offset, in an amount equal to the assessment paid to the association, against the premium tax payable by that contributing member * * * for the year in which the * * * assessment is levied.

Each respondent also included its 1986 MCHA assessments in determining its income tax credit under Minn.Stat. § 290.06, subd. 3f(6) (1986) (the insurance company credit), which provides:

> In the case of an insurance company, it shall receive a credit on the [income] tax computed as above equal in amount to any taxes based on premiums paid by it during the period for which the tax under this chapter is imposed by virtue of any law of this state, other than the [firefighter relief fund] surcharge on premiums imposed by sections 69.54 to 69.56.

For 1986, both John Hancock and Mutual Service claimed insurance company credits in excess of their income taxes and reported total liability as "none" on line 26 of their income tax returns.

The Commissioner, determining that respondents improperly included MCHA assessments in the insurance company credit taken on their 1986 state income tax returns, assessed additional income tax for 1986 against John Hancock in an order dated February 4, 1991, and against Mutual Service by order dated May 8, 1991.

The Tax Court heard respondents' consolidated appeals on January 29, 1992, and reversed the Commissioner's orders on two grounds. First, an argument not made by the parties, was that Minn.Stat. § 290.06, subd. 3f(6) (1986) provides a credit against income tax liability not only for premium taxes paid, but also for any surcharges not specifically excluded by the statute. Alternatively, the court concluded that the legislature intended MCHA assessments to be "deemed payments" of premium taxes so that insurance companies, by using the offset provision on their premium tax returns and the insurance company credit on their income tax returns, could be fully reimbursed for the amounts they paid to MCHA.

By petition for a writ of certiorari, the Commissioner challenges the decision of the Tax Court as unjustified by the evidence and not in conformity with the law.

■ 1. The essential question raised by the appeal is whether Minn.Stat. § 290.06, subd. 3f(6) (1986) authorizes respondents to include MCHA assessments in the insurance company credit taken against their income tax liabilities on either ground held to be sufficient by the Tax Court. First, does the statute permit an income tax credit for surcharges not specifically excluded by the statute? We hold that it does not. The Tax Court, reading section 290.06, subd. 3f(6), concluded it provided not just a "taxes paid" credit because it specifically excluded surcharges on premiums for firefighter relief from which the court implied that all other premium-based surcharges, such as MCHA assessments,

could be included within the credit. This reading does not withstand scrutiny for one simple reason: the statute is clear. Section 290.06, subd. 3f(6) specifically limits the insurance company credit to premium taxes paid to the state of Minnesota and makes no mention whatsoever of assessments. The firefighter relief surcharge likely was expressly excluded because it could easily be misconstrued as a tax. It is a surcharge based on a percentage of gross premiums, collected by the insurance companies from policyholders and transmitted directly to the state treasury. To allow a tax credit for a surcharge that is not an out-of-pocket expense would represent a windfall for insurers. MCHA assessments are an out-of-pocket expense, but they are based on a company's pro-rata share of the plan's losses and are paid directly to the MCHA, not to the state of Minnesota.

As to whether an offset of MCHA assessments against premium tax liability under Minn.Stat. § 62E.11, subd. 8 can be construed as a "deemed payment" of premium taxes so as to provide a credit against income tax liability under Minn. Stat. § 290.06, subd. 3f(6), again the answer is no. An MCHA assessment is not a tax because it does not go into the state treasury. The offset of MCHA assessments against payable premium taxes is not a tax payment because a tax is not paid until it is "actually transmitted to the governmental taxing entity." *Northern Natural Gas Co. v. Commissioner of Revenue*, 312 Minn. 177, 185, 251 N.W.2d 125, 130 (1977). These MCHA assessments, while properly used to reduce an insurer's premium tax liability, were never actually paid to the state as premium taxes.

The Tax Court, while conceding that MCHA assessments are not premium taxes and that offsets for the assessments are not literal payments of premium taxes, found the statute ambiguous and proceeded to examine the legislative history of both sections 290.06, subd. 3f(6) and 62E.11, subd. 8. The Tax Court concluded that the legislature intended to reimburse contributing members of MCHA fully for the MCHA assessments. This intent, in

the Tax Court's view, could be effectuated only by construing section 290.06, subd. 3f(6) to authorize inclusion of MCHA assessments as a credit against income tax liability.

Section 290.06, subd. 3f(6) is clear and unambiguous and we must give effect to its plain meaning. *See State v. Carpenter,* 459 N.W.2d 121, 126 (Minn.1990). Although consideration of legislative history is improper, *See State v. McKown,* 475 N.W.2d 63, 66 (Minn.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992), in our view, even if section 290.06, subd. 3f(6) were ambiguous and its legislative history properly considered, that history does not support the Tax Court's ruling that MCHA assessments can be credited against income tax liability. As originally enacted in 1979, Minn.Stat. § 62E.11, subd. 8 required an insurance company to choose to offset its MCHA assessments either "against the income tax or against the premium tax payable * * * *" Act of May 30, 1979, ch. 272, § 8, 1979 Minn.Laws 593. An insurer never had the option of offsetting the MCHA assessments against both the income tax and the premium tax payable. It appears clear from the legislative history that the income tax offset option was included to permit insurance companies which do not pay premium taxes to recoup their MCHA assessments. Then, in a 1984 tax simplification effort, the legislature amended the statute to eliminate the option of offsetting MCHA assessments against income tax liability. Act of April 25, 1984, ch. 514, art. 2, § 2, 1984 Minn. Laws 673. The parties agree that insurance companies seldom used the repealed provision.

Reversing the determination of the Tax Court, we hold that Minn.Stat. § 290.06, subd. 3f(6) does not authorize an insurance company to include Minnesota Comprehensive Health Association assessments in the credit for taxes paid against its income tax liabilities.

2. Because of our holding above, we reach respondents' contention that the Commissioner's application of Minn.Stat. §§ 290.06, subd. 3f(6) and 62E.11, subd. 8 violates the Equal Protection Clause of the 14th Amendment of the United States Constitution and the Uniformity Clause of Article X, Section 1 of the Minnesota Constitution. Respondents claim this is so because, first, only commercial insurers had to pay MCHA assessments and, second, even among members of the commercial class, effects of the interpretation are uneven. As the state points out, respondents' main constitutional argument goes not so much to the initial classification of commercial and non-commercial insurers,[1] as to the uneven effects among members of the commercial insurer class. These uneven effects, the state argues, are the result of the taxpayer's financial situation and not the result of discriminatory treatment.

The proper standard of review of a challenged economic classification is the rational basis test, under which courts are "especially deferential in the context of classifications made by complex tax laws." *Nordlinger v. Hahn,* —— U.S. ——, ——, 112 S.Ct. 2326, 2332, 120 L.Ed.2d 1 (1992). "When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern." *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 271–72, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979). *See also Matter of McCannel,* 301 N.W.2d 910, 917 (Minn. 1980); *Guilliams v. Commissioner of Revenue,* 299 N.W.2d 138, 143 (Minn.1980). And where, as here, no fundamental right or suspect class is involved, the statute is presumed constitutional, and the burden is on respondents as the challengers to prove constitutional violation beyond a reasonable doubt. *Rio Vista Non–Profit Housing Corp. v. County of Ramsey,* 335 N.W.2d 242, 245 (Minn.1983), *appeal dismissed,* 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984). This they have not done. Respondents have failed to prove that the economic classifications here are not rationally re-

---

**1.** This classification was upheld in *Insurer's Action Council, Inc. v. Markman,* 490 F.Supp. 921, 927 (D.Minn.1980).

lated to the furtherance of a legitimate governmental interest. The elimination of the income tax offset option was rationally related to the legitimate state goal of tax simplification where the provision was rarely used and its removal would have a minimal impact upon revenue. Furthermore, any difference of effect that may have arisen from the 1984 amendment to the income tax offset provision or the commissioner's application of the statutes is the result, not of discriminatory treatment, but of the unique financial situation of individual insurance company taxpayers. The possibility that a law *"may* actually fail" to operate with equality is not enough to invalidate it. *State ex rel. Merrick v. District Court of Hennepin County,* 33 Minn. 235, 245–46, 22 N.W. 625, 628 (1885) (emphasis in original). The Commissioner's application of Minn.Stat. § 290.06, subd. 3f(6) and 62E.11, subd. 8 does not violate the Equal Protection Clause of the 14th Amendment to the United States Constitution or the Uniformity Clause of Article X, Section 1 of the Minnesota Constitution.

We reverse the decision of the Tax Court and reinstate the orders of the Commissioner.

Reversed; orders reinstated.

PAGE, J., took no part in the consideration or decision of this case.