In re 1994 AND 1995 SHORELINE IMPROVEMENT CONTRACTOR LICENSES OF LANDVIEW LANDSCAPING, INC. (on appeal from the Minnehaha Creek Watershed District).

No. C9–95–2317.

Court of Appeals of Minnesota.

April 23, 1996.

Review Denied June 11, 1996.

John P. Boyle, Michael L. Diggs, Best & Flanagan, Minneapolis, for Relator Landview Landscaping, Inc.

Louis N. Smith, Waverly Eby Booth, Smith Parker, P.L.L.P., Minneapolis, for Respondent Minnehaha Creek Watershed District.

Hubert H. Humphrey, III, Attorney General, Matthew B. Seltzer, Assistant Attorney General, St. Paul, for Board of Water and Soil Resources.

Considered and decided by LANSING, P.J., TOUSSAINT, C.J., and MANSUR, J.*

## OPINION

LANSING, Judge.

A shoreline improvement contractor appeals an administrative decision upholding the watershed district's power to license and determining that the conditions imposed on the licenses were reasonable and that the procedures followed did not violate due process. Because the watershed district lacked express or implied statutory authority to license the contractor, we reverse.

### FACTS

Stephen Spartz owns Landview Landscaping, a Minnesota corporation that performs "riprap" work. Riprapping is a procedure to add rock and foundation material to the shoreline to protect it from erosion. In May 1993 Landview applied for a shoreline improvement contractor license from the Minnehaha Creek Watershed District. During consideration of the application, the district received evidence of eight Landview projects violating its standards. In response the board of managers issued Landview a license subject to five conditions. This 1993 conditional license expired March 31, 1994. Landview performed no riprap work with the 1993 conditional license.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Six months after the 1993 license expired, Landview applied for a 1994 license. Spartz attended an October board meeting and addressed the board of managers. The managers granted Landview a license, subject to four conditions: the board of managers must approve all permit applications; an independent professional engineer, selected by Landview and at its expense, must certify permit applications before review by the district; the engineer must certify that all completed projects follow the approved permit application; and, Landview must comply with all district permit conditions and rules.

The managers reconsidered the conditions on Landview's 1994 license in November 1994. After hearing Spartz's objections, the managers issued a license, subject to the same four conditions. Landview applied for a 1995 license in December 1994. No one from Landview attended the meeting considering the application. The managers issued Landview a 1995 license, subject to the same conditions as the 1994 license.

Landview appealed the 1994 and 1995 conditional licenses to the Board of Water and Soil Resources, which upheld the licenses. This court granted Landview a writ of certiorari in October 1995. Landview challenges the district's authority to issue licenses and permits, contends making the licenses conditional was arbitrary or capricious, and alleges procedural due process violations.

## ISSUES

I. Does the watershed district have express statutory authority to license shoreline improvement contractors?

II. Does the watershed district have implied statutory authority to license shoreline improvement contractors?

## ANALYSIS

■ Judicial review of administrative decisions is limited but extends to whether an agency has exceeded its statutory authority, acted arbitrarily and capriciously, or violated due process. Minn.Stat. § 14.69 (1994) (listing six grounds for reversing or modifying agency decisions). Issues of fact and policy are for administrative and not judicial deter-

mination, but courts have the independent power to determine questions of law. *Northern States Power Co. v. Minnesota Pub. Utils. Comm.*, 344 N.W.2d 374, 377 (Minn. 1984), *cert. denied*, 467 U.S. 1256, 104 S.Ct. 3546, 82 L.Ed.2d 850 (1984); *State ex rel. Spurck v. Civil Serv. Bd.*, 226 Minn. 240, 248–49, 32 N.W.2d 574, 580 (1948).

Landview's appeal challenges the watershed district's authority to issue both licenses and permits. Landview's alleged injuries stem from its conditional licenses, rather than any permit, and consequently we consider only whether the district has express or implied authority to license.

## I

A watershed district has the power to sue and be sued, to incur debts, to exercise the power of eminent domain, to provide for assessments, and to perform acts "necessary and proper" for the district to carry out its express powers. Minn.Stat. § 103D.335, subd. 1 (1994) (listing the general powers of a watershed district). This enumerated list of express powers does not include licensing.

■ One of the "specific purposes" for establishing a watershed district is "to regulate improvements by riparian property owners of the beds, banks, and shores of lakes, streams, and wetlands for preservation and beneficial public use." Minn.Stat. § 103D.201, subd. 2(11) (1994). The district argues that this language, coupled with its specific authority to perform "acts necessary and proper for the watershed district to carry out and exercise the powers expressly vested in it[,]" creates an express authority to license. Minn.Stat. § 103D.335, subd. 1(5) (1994). The district's argument confuses a general purpose with an express power. The regulation of improvements by riparian property owners is a stated *purpose* for establishing a watershed district, but not an enumerated *power* for either the district or its board of managers. Watershed districts do not have an express power to license.

## II

The district asserts that even if it does not have express power to license contractors,

the power may be implied. Generally the power to license occupations is expressly granted by state statute. *See, e.g.,* Minn. Stat. § 326.2421, subd. 3 (1994 & 1995 Supp.) (alarm and communication contractors); Minn.Stat. § 326.10, subd. 1 (1994 & 1995 Supp.) (architects, engineers, land surveyors, and landscape architects); Minn.Stat. § 326.84 (1994 & 1995 Supp.) (residential building contractors); Minn.Stat. § 326.60 (1994) (water conditioning contractors).

Even if a licensing power could arise by implication, nothing in the watershed legislation implies a power to license. Unlike other regulatory powers, licensing is not described or referred to in chapter 103D. *See* Minn.Stat. § 103D.345, subd. 1 (1994) (power to issue permits); Minn.Stat. § 103D.341, subd. 1 (1994) (power to promulgate rules). Courts cannot construe a statute to confer implicit authority when it would contravene the legislature's apparently deliberate failure to explicitly grant such authority. *State v. Lloyd A. Fry Roofing Co.,* 310 Minn. 528, 534 n. 6, 246 N.W.2d 696, 700 (1976).

Any power to license not expressed in a statute could only stem from the police power. *Lyons v. City of Minneapolis,* 241 Minn. 439, 442, 63 N.W.2d 585, 590 (1954). The "police power" generally refers to the power of the state and its political subdivisions "to impose such restraints upon private rights as are necessary for the general welfare." *Alexander Co. v. City of Owatonna,* 222 Minn. 312, 322, 24 N.W.2d 244, 250 (1946). This government power is essential and difficult to limit, as it includes "all matters" of public welfare. *Id.* at 322, 24 N.W.2d at 251.

Municipalities have exercised police powers, derived from the state, to license businesses. *Franklin Theatre v. City of Minneapolis,* 293 Minn. 519, 521, 198 N.W.2d 558, 560 (1972) (mem.); *State v. Northern Raceway Corp.,* 381 N.W.2d 526, 528 (Minn. App.1986), *review denied* (Minn. Apr. 24, 1986). But even these powers are limited. *See Minnetonka Elec. Co. v. Village of Golden Valley,* 273 Minn. 301, 308, 141 N.W.2d 138, 143 (1966) (holding that village lacked statutory authority to license electricians); *see also Welsh v. City of Orono,* 355 N.W.2d 117, 121 (Minn.1984) (holding that municipality lacked authority to regulate dredging when DNR had exclusive jurisdiction to issue dredge permits).

A watershed district has some attributes of a municipality. *See* Minn.Stat. § 103D.225, subd. 6 (1994) (a properly established watershed district is a political subdivision of the state); *see also Lenz v. Coon Creek Watershed Dist.,* 278 Minn. 1, 18, 153 N.W.2d 209, 221 (1967) (watershed district in a broad sense may be considered a municipal corporation). But there are significant differences between a watershed district and a municipality. For instance a watershed district may levy and collect special assessments, but it has no other taxing power. *Id.* 278 Minn. at 17–18, 153 N.W.2d at 221. Other administrative agencies also have the power to levy special assessments. Minn.Stat. § 275.066 (1994 & 1995 Supp.) (listing special taxing districts, including sanitary districts and metropolitan airports commission). Watershed districts more nearly resemble administrative agencies in that the districts govern a single topic: water. *Adelman v. Onischuk,* 271 Minn. 216, 232, 135 N.W.2d 670, 681 (1965), *cert. denied,* 382 U.S. 108, 86 S.Ct. 257, 15 L.Ed.2d 192 (1965). In addition, watershed districts are created not by charter but by the Board of Water and Soil Resources. Minn.Stat. § 103D.101, subd. 1(1) (1994). And, unlike municipalities, watershed district officials are not elected; the Board of Water and Soil Resources appoints the first board of managers, *Id.,* subd. 1(3), and county commissioners appoint subsequent managers, Minn.Stat. § 103D.311, subd. 2 (1994).

Watershed districts are not sufficiently similar to municipalities to warrant extending broad municipal police powers to watershed districts. Without municipal police powers, watershed districts lack any implied power to license.

We recognize that in developing a system to license shoreline improvement contractors, the watershed district was responding to a compelling problem of noncompliance. But we conclude that because the district does

not have the authority to license, the district must pursue alternative solutions. The district's lack of licensing power is dispositive, thus we do not consider Landview's arguments that the license conditions were arbitrary or capricious, lacked sufficient evidentiary support, or that the district's standards are vague. But our examination of the record compels us to note that the board of managers provided Landview with ample procedural due process.

## DECISION

A watershed district lacks express or implied statutory authority to license shoreline improvement contractors.

**Reversed.**