LANDVIEW LANDSCAPING,
INC., Appellant,

v.

MINNEHAHA CREEK WATERSHED
DISTRICT, Respondent.

No. C4–97–849.

Court of Appeals of Minnesota.

Oct. 14, 1997.

Review Denied Dec. 22, 1997.

John P. Boyle, Best & Flanagan, P.L.L.P., Minneapolis, for appellant.

Louis N. Smith, Smith Parker, P.L.L.P., Minneapolis, for respondent.

Considered and decided by SHORT, P.J., and PARKER and KALITOWSKI, JJ.

## OPINION

PARKER, Judge.

A shoreline improvement contractor appeals a district court judgment dismissing its damage claims against a watershed district. Because the alleged tortious conduct of the watershed district is protected by statutory discretionary and due-care immunity, we affirm.

## FACTS

Appellant Landview Landscaping started doing business as a shoreline improvement contractor on Lake Minnetonka during the winter of 1992. Respondent Minnehaha Creek Watershed District is the public body charged with protecting the Lake Minnetonka shoreline. In February 1993, the district adopted Rule M, later renamed Rule L, requiring that all shoreline improvement contractors be licensed by the district.

Landview applied for a license in May 1993. About that same time, the district received a consumer complaint directed at a Landview project. After receiving notice that another Landview project violated DNR rules, the district decided to investigate all Landview projects undertaken during 1992–93. That investigation concluded that Landview violated district rules and improperly constructed 18 of its 21 projects. The district also received notice that Landview had lost its insurance coverage. As a result of these findings, the district issued Landview a license conditioned on the following requirements:

1. All permit applications shall be approved by the Board of Managers and will not be eligible for issuance of a general permit.

2. An independent professional engineer registered in the State of Minnesota, of Landscape's choosing, shall certify proposed permit application exhibits prior to review by the District.

3. An independent professional engineer registered in the State of Minnesota, of Landscape's choosing, shall certify that completed projects are constructed in accordance with the approved permit application.

4. All District rules and permit conditions shall be complied with.

The district also ordered Landview to complete remedial work on a project and post a bond until that work was completed.

Landview successfully challenged the district's licensing authority. *See In re 1994 and 1995 Shoreline Improvement Contractor Licenses of Landview Landscaping, Inc.*, 546 N.W.2d 747 (Minn.App.1996), *review denied* (Minn. June 11, 1996). Landview then filed a complaint in district court claiming that the district tortiously interfered with Landview's business contracts and violated Landview's right of equal protection. The district court entered summary judgment dismissing the tortious interference claims and ruling that the district's conduct was statutorily immune from suit. The district court also dismissed the equal-protection claims, ruling that Landview had produced no evidence of intentional discrimination.

## ISSUES

1. Does statutory discretionary immunity apply to the watershed district's adoption of a rule that required licensing of all shoreline improvement contractors?

2. Does statutory due care immunity apply to the watershed district's implementation of the licensing requirement?

3. Did the watershed district's implementation of the licensing requirement violate the equal protection rights of Landview Landscaping?

## ANALYSIS

Summary judgment is proper when there are no genuine issues of material fact and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. On appeal from summary judgment, we answer two questions: (1) whether there are any genuine issues of material fact to be determined; and (2) whether the district court erred in its application of the law. *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn. 1996). Facts must be viewed in favor of the party against whom judgment was granted. *Id.*

## I.

█ A municipality is immune from liability for the performance of a discretionary function or duty, whether or not the discretion is abused. Minn.Stat. § 466.03, subd. 6 (1996). Both parties agree that the watershed district is a municipality for the purpose of determining immunity. *See* Minn.Stat. § 466.01, subd. 1 (1996) (municipality includes any political subdivision). Governmental immunity presents a question of law that we review de novo. *Waste Recovery Co-op. of Minnesota v. County of Hennepin*, 517 N.W.2d 329, 332 (Minn.1994). The governmental entity bears the burden of establishing that its conduct is immune. *Id.* The critical inquiry is whether the challenged governmental conduct involved a balancing of policy objectives. *Id.*

Landview argues that the district's conduct was based on the exercise of professional judgment by district employees and was not protected by statutory immunity, citing *Waste Recovery*, 517 N.W.2d at 329. In *Waste Recovery*, a county employee erroneously interpreted the term "waste" while enforcing a county ordinance, and the supreme court held that the challenged conduct was nothing more than the exercise of professional judgment by a single county employee and not protected by statutory discretionary immunity. *Id.* at 332–33.

Landview analogizes the legal decision of district personnel that licensing was authorized by statute to the county employee's interpretation of waste in *Waste Recovery*. However, the conduct that Landview challenges here is not the district's legal authority to license. Landview already successfully challenged that erroneous legal determination in *In re 1994 and 1995 Shoreline Improvement Contractor Licenses of Landview Landscaping, Inc.*, 546 N.W.2d at 747. Here, Landview challenges the district's decision that licensing was a proper means to protect the shoreline.

█ The purpose of Minn.Stat. § 466.03, subd. 6, is "to prevent courts from passing judgment 'on policy decisions entrusted to coordinate branches of government.'" *Waste Recovery*, 517 N.W.2d at 332 (citing *Holmquist v. State*, 425 N.W.2d 230, 231 (Minn.1988)); *see also Nusbaum v. County of Blue Earth*, 422 N.W.2d 713, 718 (Minn. 1988). Public policy decisions involving social, political, or economical considerations are discretionary functions entitled to immunity. *Nusbaum*, 422 N.W.2d at 722.

█ Evidence that government conduct involves a balancing of policy considerations may be found

(1) in the language of the statute authorizing the conduct; (2) in an examination of the conduct itself or (3) in the policy determinations that give rise to the challenged conduct.

*Waste Recovery*, 517 N.W.2d at 332–33. A review of these sources of evidence establishes that the district's conduct was a balancing of policy considerations.

█ Although its statutory authority did not include licensing, the district was nevertheless authorized "to regulate improvements by riparian property owners of beds, banks, and shores of lakes * * * for preservation and beneficial use." Minn.Stat. § 103D. 201, subd. 2(11) (1996). The district determined that placing the entire burden of compliance on landowners was not adequately protecting the shoreline and adopted the plan to license shoreline contractors as a reasonable way to accomplish this goal. The district held "notice and comment" public hearings before adopting its licensing rule. The rule's statement of policy was to:

(a) Assure compliance with the District's Rules regarding shoreline improvement by requiring those contractors performing such work to apply for and receive a license from the District; and

(b) * * * [P]rotect District residents and business utilizing shoreline improvement contractors by requiring such contractors to be bonded and to obtain insurance coverage.

After the district issued a conditional license to Landview, that company appealed to the Minnesota Board of Water and Soil Resources (BWSR). The district's licensing requirement was considered and approved by the BWSR, the state entity with oversight authority. Based on this record, the water-

shed district's decision to adopt a licensing requirement was a policy-based decision protected by statutory discretionary immunity under Minn.Stat. § 466.03, subd. 6.

## II.

■ A municipality is also immune from liability arising from " [a]ny * * * act or omission of an officer or employee, exercising due care, in the execution of a valid or invalid * * * rule." Minn.Stat. § 466.03, subd. 5 (1996). Landview argues that due care is a fact question that precludes summary judgment, relying on *Boop v. City of Lino Lakes,* 502 N.W.2d 409 (Minn.App.1993), *review denied* (Minn. Sept. 10, 1993). *See id.* at 411 (holding question of city's exercise of due care in enforcement of ordinance was question of fact and inappropriate for summary judgment). However, there is no conflicting evidence in the record on the issue of due care. The record establishes that the district's decision to issue a conditional license was a balance of policy considerations, that the BWSR affirmed the district's issuance of a conditional license to Landview, and that the district's implementation of the licensing requirement afforded Landview due process.

[O]ur examination of the record compels us to note that the board of managers provided Landview with ample procedural due process.

*In re 1994 and 1995 Shoreline Improvement Contractor Licenses of Landview Landscaping, Inc.,* 546 N.W.2d at 751.[1] Landview points to no evidence in the record that district employees implemented the licensing requirement without due care. Landview failed to meet its burden of showing a material fact issue requiring trial. *See* Minn. R. Civ. P. 56.05; *Patton v. Newmar Corp.,* 538 N.W.2d 116, 119 (Minn.1995) (nonmoving party must present specific facts demonstrating existence of genuine issue of material fact).

Instead, Landview argues that due care could not apply to the district's implementation of a rule that lacked statutory authority. Landview's argument misapplies the plain language of the statute that immunizes claims based upon "the execution of a valid or invalid rule." Minn.Stat. § 466.03, subd. 5 (1996) (emphasis added).

## III.

Landview contends that the district imposed illegal and unauthorized restraints on the company's right and ability to conduct business by imposing special conditions that were not imposed upon other contractors. Landview claims only an equal protection violation of the federal constitution.

The proper standard of review of a challenged economic classification is the rational basis test. * * * [W]here * * * no fundamental right or suspect class is involved, [state action] is presumed constitutional.

*John Hancock Mut. Life Ins. Co. v. Commissioner of Revenue,* 497 N.W.2d 250, 253 (Minn.1993) (challenging unequal effect of statute under federal constitution) (citations omitted).

■ Landview characterizes the conditions placed on it as discriminatory and argues that this evidence is sufficient to proceed to trial on its equal protection claim. Landview's evidence establishes only that it was treated differently; it does not establish that this different treatment involved a fundamental right or a suspect class. Therefore, we presume the conditions placed on its license were constitutional. *See id.* Further, unequal application of a statute is not a denial of equal protection unless the challenging party shows "by a clear preponderance of the evidence that there was intentional or purposeful discrimination." *State v. Ri–Mel, Inc.* 417 N.W.2d 102, 108 (Minn.App. 1987), *review denied* (Minn. Feb. 17, 1988). Landview points to no evidence of intentional or purposeful discrimination.

■ Instead, the record establishes that the district received several consumer complaints about Landview's work, that only 3 of

---

1. We recognize this language is dictum from our earlier decision. Nevertheless, it is part of the record and evidence of the district's due care.

Landview projects conformed to district rules, that Landview's insurance was cancelled, and that Landview refused to perform remedial work on a project. Landview's conduct was sufficiently different from that of other contractors to justify different treatment and provided a rational basis for the conditions placed on its license. *See John Hancock,* 497 N.W.2d at 253 (when action is rationally based, uneven effects on particular group are of no constitutional concern).

**Affirmed.**